**AFFIDAVIT OF ROGER B. HORNE, JR. IN SUPPORT OF BUFFALO PUMPS INC.'S NOTICE OF REMOVAL OF CIVIL ACTION**

**STATE OF WASHINGTON** )
) **SS.**
**COUNTY OF KITSAP** )

I, Roger B. Horne, Jr, being under penalty of perjury, declare and say:

1. I am a retired Rear Admiral of the United States Navy, in which I served between 1956 and 1991.

2. I began my Navy career in 1956, immediately after receiving a Bachelor of Science degree in Naval Engineering from the United States Naval Academy at Annapolis, Maryland. I have also received extensive post-graduate education in naval engineering, including a Master of Science Degree in Mechanical Engineering from the U.S. Naval Postgraduate School, and have taught Naval Engineering as a Visiting Professor at the University of Michigan. Throughout my Navy career, I concentrated in areas of ship design, engineering, construction, overhaul and inspection. Ultimately, I achieved the rank of Chief Engineer and Deputy Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design and Engineering. Prior to that, I served as Deputy Commander, NAVSEA for Facilities and Industrial Management; Commander, Puget Sound Naval Shipyard; Commander, Engineering Duty Officer School; Production and Repair Officer, Mare Island Naval Shipyard; Nuclear Engineering Manager, Puget Sound Naval Shipyard; Nuclear Submarine Inspection Officer, Supervisor of Shipbuilding Office, Ingalls Shipyard and Chief Engineer in the *USS Ozbourn* (DD846).

3. In addition to my training and experience in Navy ship construction, as outlined above, I have been recognized for achievements in the field of marine machinery and engineering, and have received three Navy Legion of Merit Awards and three Meritorious

Service Awards for Engineering and Industrial Achievement and an award from the Marine Machinery Association.

4. I submit this Affidavit in support of defendant Buffalo Pumps, Inc.'s Notice of Removal to attest to the level of supervision, direction and control exercised by the U.S. Navy over the design and manufacture of equipment, including centrifugal pumps and related equipment ("pumps"), intended for installation on Navy vessels such as destroyers, including the *USS Cony* (DD-508), *USS Henley* (DD-762), *USS John King* (DDG-3), and *USS Dewey* (DLG-14/DDG-45). In addition, I have personal knowledge of the comprehensive plans, specifications and requirements which governed suppliers like Buffalo Pumps of equipment for use aboard Navy ships. More particularly, I can attest that any and all work performed on pumps built and supplied for these ships by vendors such as Buffalo Pumps was performed to the requirements specified by the Navy, and that the work was reviewed and inspected by Navy personnel in the vendor's plant and in the shipbuilding yards. In many instances during my career I personally inspected equipment, including pumps, to verify conformance with the requirements specified, although more immediate supervision typically was exercised by officers and other Navy personnel under my command or the command of NAVSEA or its predecessor, the Bureau of Ships ("BUSHIPS").

5. Pumps built for Navy vessels, including Buffalo Pumps' pumps, were manufactured according to detailed specifications prepared, written and issued exclusively by, and plans approved by, the Navy, specifically NAVSEA or BUSHIPS. In my role as Chief Engineer and Deputy Commander for NAVSEA's Ship Design and Engineering Division, I was personally responsible to the Commander of NAVSEA for developing ship designs and for overall technical support to the operating fleet, maintenance of ships, and ships under construction. I was also responsible for maintaining naval ship military specifications and for

monitoring compliance with the specifications by all vendors and contractors of naval equipment.

6. The Navy chain of command concerning ship construction involves several layers of authority related to technical and contractual control over Navy shipbuilding. The Secretary of the Navy has ultimate authority over the Navy and Navy shipbuilding; immediately below the Secretary, as has been the case since the creation of NAVSEA, is the Chief of Naval Operations ("CNO"), to whom NAVSEA reports. Prior to the establishment of NAVSEA, BUSHIPS controlled all combat ship design and construction and reported to the CNO as well as a civilian Assistant Secretary. Since the creation of NAVSEA, NAVSEA reports to the CNO for all military ship design and construction.

7. Under the command of NAVSEA, as was the case with BUSHIPS, the Navy's shipbuilding structure was comprised of several divisions and levels of authority concerning ship design, construction, repair and inspection. Technical and contractual control over shipboard equipment and material was directed by the Commander of Naval Sea Systems and the Commander of Naval Supply. Each of these two organizations had oversight responsibility concerning, among other things, pumps built for Navy vessels. Compliance with the standards and specifications required for pumps built for Navy use was directly monitored by Naval Machinery Inspectors under both of these divisions: the Machinery Inspectors under Naval Supply worked on-site at the vendor's (in this case Buffalo Pumps') manufacturing facility, and the Machinery Inspectors under Naval Sea Systems Commands carried out their responsibilities at the shipbuilding yards. Moreover, it was common in my experience for Directors of the Machinery and Propulsion Equipment Groups, who worked for me at times during my career, to inspect the manufacturing process at vendors' plants.

8. In my experience, it was the Machinery Inspectors who exercised primary, front-line control over the work performed for the Navy by vendors such as Buffalo Pumps in the production of pumps and other equipment. The Naval Machinery Inspectors were responsible for assuring that contractors such as Buffalo Pumps followed the required contract specifications as they relate to naval machinery. Further, the Naval Machinery Inspectors would report to their superiors any violations or failures to comply with specifications.

9. The Navy retained the "final say" over the design of any piece of equipment, and made the ultimate decision regarding how to resolve an engineering disagreement between the Navy and an outside supplier.

10. In addition, I can attest that the military specifications for pumps and other equipment intended for use aboard Navy vessels, known as "MilSpecs," were drafted, approved and maintained by the Navy, specifically NAVSEA, to address all aspects of shipboard equipment and materials requirements, including the materials to be used, and any changes to these specifications were made by the Navy. NAVSEA maintained and controlled the MilSpecs largely because it had superior knowledge of the demands and requirements of combat-ready vessels. NAVSEA or BUSHIPS also prepared contract specifications which incorporated the MilSpecs. These specifications reflected the state of the art and the special needs of combat vessels destined for combat with our sailors.

11. The Navy had unique specifications for pumps. The specifications were communicated to pump vendors such as Buffalo Pumps when the Navy issued its Request for Proposal for certain equipment.

12. The Navy specifications also covered the nature of any communication affixed to pumps or other equipment supplied to the Navy. A vendor such as Buffalo Pumps would not have been permitted (either under the specifications or, as a matter of Navy practice) to attach

any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos, without prior discussion, approval and acceptance by the Navy.

13. In addition to specifications regarding design and manufacturing of the equipment itself, the Navy also had detailed specifications that governed the form and content of written materials to be delivered with equipment, including pumps, supplied to the Navy. These written materials typically consisted of technical or instruction manuals that were designed to assist the Navy engineering staff in servicing and maintaining the equipment. Navy personnel participated in and approved the preparation of this kind of information. The Navy specifications for these manuals contained detailed direction as to the kinds of information to be included. A vendor such as Buffalo Pumps would not have been permitted (either under the specifications or, as a matter of Navy practice) to include a warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos, without prior discussion, approval and acceptance by the Navy.

14. In sum, all equipment, including Buffalo Pumps' pumps, manufactured for use aboard Navy vessels, including the *USS Cony* (DD-508), *USS Henley* (DD-762), *USS John King* (DDG-3), and *USS Dewey* (DLG-14/DDG-45), were manufactured pursuant to Navy specifications under close supervision by personnel employed by the Navy, and approved for installation aboard these vessels exclusively by the Navy and its designated officers.

I declare under penalty of perjury under laws of the State of Washington that the foregoing is true and correct, and that if called as a witness, I could competently testify to the foregoing facts, all of which are within my own personal knowledge.

Executed this 25 day of January, 2007, at Silverdale, Washington.

Roger B Horne

ROGER B. HORNE, JR.

STATE OF WASHINGTON )
) SS.
COUNTY OF KITSAP )

On this 25th day of January, 2007, before me, a Notary Public, the undersigned officer, personally appeared Roger B. Horne, Jr., known to me to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

APRIL R IHDE NOTARY MAY 11, 2009 PUBLIC STATE OF WASHINGTON

April Ihde
Notary Public

My Commission Expires: 5-11-09