# EXHIBIT E

# HANDBOOK

OF THE

# HOSPITAL CORPS

## UNITED STATES NAVY

## 1939

PUBLISHED BY

THE BUREAU OF MEDICINE AND SURGERY

UNDER THE AUTHORITY OF

THE SECRETARY OF THE NAVY

UNITED STATES

GOVERNMENT PRINTING OFFICE

WASHINGTON : 1939

For sale by the Superintendent of Documents, Washington, D. C. - - - - - Price $1.75 (Buckram)

BUREAU OF MEDICINE AND SURGERY,
NAVY DEPARTMENT,
*Washington, D. C., July 1, 1939.*

The Handbook of the Hospital Corps, United States Navy, 1939, is a revised edition of the former Handbook of the Hospital Corps, United States Navy, 1930, and is compiled from articles prepared by members of the Medical, Dental, Hospital, and Nurse Corps, U. S. Navy, and reviewed and revised by Commander W. J. C. Agnew, Medical Corps, and Chief Pharmacist N. L. Saunders, U. S. Navy. It is published for the instruction and guidance of members of the Medical Department of the United States Navy and for use at the Hospital Corps Schools.

The use in this volume of certain portions of the text of the United States Pharmacopoeia is by virtue of permission received from the Board of Trustees of the United States Pharmacopoeial Convention. The said Board of Trustees is not responsible for any inaccuracy of quotation nor for any errors in the statement of quantities or percentage of strengths.

Permission to use for comment parts of the National Formulary, Sixth Edition, in this volume has been granted by the Committee on Publications by authority of the American Pharmaceutical Association.

Authority for use of New and Nonofficial Remedies, 1935 Edition, has been granted by the American Medical Association.

ROSS T. MCINTIRE,
*Surgeon General, U. S. Navy.*

MEDICINE AND SURGERY,
NAVY DEPARTMENT,
*Washington, D. C., July 1, 1939.*

ed States Navy, 1939, is a revised spital Corps, United States Navy, ed by members of the Medical, avy, and reviewed and revised by ps, and Chief Pharmacist N. L. the instruction and guidance of United States Navy and for use at

of the text of the United States eived from the Board of Trustees ion. The said Board of Trustees otation nor for any errors in the ngths.

he National Formulary, Sixth Edi- he Committee on Publications by sociation.

Remedies, 1935 Edition, has been

ROSS T. MCINTIRE,
*Surgeon General, U. S. Navy.*

# TABLE OF CONTENTS


| | Page |
|---|---|
| FOREWORD | V |
| CHAPTER I. HISTORY OF THE HOSPITAL CORPS | 1 |
| II. ANATOMY AND PHYSIOLOGY | 5 |
| III. SECTION 1. MINOR SURGERY AND FIRST AID | 85 |
| SECTION 2. BANDAGES AND BANDAGING | 131 |
| SECTION 3. SPLINTS AND APPLIANCES | 148 |
| SECTION 4. EMERGENCY DENTAL TREATMENT | 165 |
| IV. SECTION 1. MATERIA MEDICA AND THERAPEUTICS | 177 |
| SECTION 2. TOXICOLOGY | 257 |
| V. SECTION 1. NURSING | 271 |
| SECTION 2. WARD MANAGEMENT | 344 |
| SECTION 3. OPERATING ROOM AND SURGICAL TECHNIQUE | 356 |
| VI. SECTION 1. HYGIENE AND SANITATION | 371 |
| SECTION 2. ALLERGY | 469 |
| SECTION 3. GENITO-URINARY AND VENEREAL DISEASES | 490 |
| SECTION 4. PREVENTION OF VENEREAL DISEASES | 511 |
| SECTION 5. INDUSTRIAL MEDICINE AND INDUSTRIAL HAZARDS | 514 |
| SECTION 6. FIELD SANITATION | 521 |
| SECTION 7. DUTY WITH MARINE CORPS EXPEDITIONARY FORCES | 564 |
| SECTION 8. LANDING FORCE | 570 |
| SECTION 9. SHORE PATROL | 574 |
| VII. DIETS AND MESSING FOR THE SICK | 579 |
| VIII. PHARMACY | 599 |
| IX. CHEMISTRY | 643 |
| X. ANAESTHESIA | 735 |
| XI. SECTION 1. ADMINISTRATION AND GENERAL CLERICAL PROCEDURES | 749 |
| SECTION 2. HOSPITAL SUPPLIES AND PROPERTY ACCOUNTABILITY | 774 |
| SECTION 3. COMMISSARY SUPERVISION | 804 |
| SECTION 4. DEATHS AND MEDICO-LEGAL MATTERS | 833 |
| XII. HOSPITAL CORPS TECHNICAL SPECIALTIES. | |
| SECTION 1. AVIATION MEDICINE | 847 |
| SECTION 2. BASAL METABOLISM | 849 |
| SECTION 3. BLOOD GROUPING AND MATCHING | 856 |
| SECTION 4. CHEMICAL WARFARE | 862 |
| SECTION 5. DIVING AND SUBMARINE DUTY | 872 |
| SECTION 6. ELECTROCARDIOGRAPHY | 879 |
| SECTION 7. EMBALMING | 882 |
| SECTION 8. INDEPENDENT DUTY | 887 |
| SECTION 9. LABORATORY PROCEDURES AND TECHNIQUE | 889 |
| SECTION 10. PHYSICAL THERAPY | 917 |
| SECTION 11. RECRUITING | 936 |
| SECTION 12. X-RAY | 940 |
| INDEX | 969 |

## FOREWORD

In this 1939 edition of the Handbook of the Hospital Corps, U. S. Navy, the subject matter has been revised, enlarged, and brought up-to-date, as nearly as possible, with the sciences which are briefly discussed in the various chapters and sections.

The handbook is intended to serve as a general guide and reference book for the hospital corpsmen of the Navy, especially those performing duty independent of medical officers, and as a textbook for their instruction in the Hospital Corps Schools and elsewhere. It contains information and instructions concerning the duties of the Hospital Corps of the Navy, but hospital corpsmen, particularly those in the upper ratings, are urged to make frequent reference to the U. S. Navy Regulations, the Manual of the Medical Department, U. S. Navy, the manuals of other Navy Department bureaus, circular letters, etc., for additional information and instructions.

The principal subjects have been arranged in the order in which they occur in examinations for advancement in rating. As these subjects necessarily are presented in epitomized form, readers of the handbook should realize that the information contained in it must be supplemented by reference to the standard textbooks and professional journals usually available in the medical libraries of hospitals, ships, and stations.

The Bureau of Medicine and Surgery herewith expresses appreciation to the following-named members of the Medical Department, U. S. Navy for the time and effort spent in preparing, reviewing, and revising the material for this book:

| | |
|---|---|
| Captain J. Harper, (MC), U. S. Navy<br>Commander G. B. McArthur, (MC), U. S. Navy | Anatomy and Physiology. |
| Commander M. D. Willcutts, (MC), U. S. Navy | Minor Surgery and First Aid.<br>Bandages and Bandaging. |
| Captain H. E. Harvey, (DC), U. S. Navy<br>Captain W. L. Darnall, (DC), U. S. Navy<br>Commander R. S. Davis, (DC), U. S. Navy | Emergency Dental Treatment. |
| Chief Pharmacist K. G. Swann, U. S. Navy | Materia Medica and Therapeutics.<br>Pharmacy. |
| Chief Pharmacist A. T. Schwartz, U. S. Navy<br>Pharmacist P. S. Gault, U. S. Navy | Toxicology. |
| Chief Nurse J. Ferris, U. S. Navy | Nursing. |
| Chief Nurse P. W. Hoyle, U. S. Navy | Ward Management. |
| Commander G. A. Eckert, (MC), U. S. Navy | Operating Room and Surgical Technique. |
| Lieutenant O. L. Burton, (MC), U. S. Navy | Hygiene and Sanitation.<br>Prevention of Venereal Diseases. |
| Lieut. Commander F. M. Rohow, (MC), U. S. Navy | Allergy. |
| Commander M. S. Mathis, (MC), U. S. Navy | Genito-urinary and Venereal Diseases. |

| | |
|---|---|
| Commander H. L. Shinn, (MC), U. S. Navy | Industrial Medicine and Industrial Hazards. |
| Captain W. L. Mann, (MC), U. S. Navy | Field Sanitation. |
| Commander W. T. Brown, (MC), U. S. Navy | Duty with Marine Corps Expeditionary Forces. |
| Commander L. D. Arbuckle, (MC), U. S. Navy | Landing Force. Shore Patrol. |
| Nurse R. Dunbar, U. S. Navy | Diets and Messing for the Sick. |
| Lieut. Commander C. L. Bozarth, (MC), U. S. Navy; Pharmacist's mate second class, J. F. Reid, U. S. Navy | Chemistry. |
| Captain F. L. Conklin, (MC), U. S. Navy | Anæsthesia. |
| Chief Pharmacist N. L. Saunders, U. S. Navy | Administration and General Clerical Procedures. |
| Division of Finance, Bureau of Medicine and Surgery. | Hospital Supplies and Property Accountability. |
| Chief Pharmacist J. H. Bell, U. S. Navy | Commissary Supervision. |
| Captain C. W. O. Bunker, (MC), U. S. Navy; Chief Pharmacist R. Aikman, U. S. Navy | Deaths and Medico-Legal Matters. |
| Commander J. C. Adams, (MC), U. S. Navy | Aviation Medicine. |
| Commander J. M. McCants, (MC), U. S. Navy | Basal Metabolism. |
| Commander H. E. Ragle, (MC), U. S. Navy | Blood Grouping and Matching. |
| Commander B. H. Adams, (MC), U. S. Navy | Chemical Warfare. |
| Commander F. S. Johnson, (MC), U. S. Navy | Diving and Submarine Duty. |
| Captain C. R. Baker, (MC), U. S. Navy | Electrocadiography. |
| | Embalming. (Based on the Manual of the Medical Department, U. S. Navy.) |
| Chief Pharmacist C. P. Dean, U. S. Navy | Independent Duty. |
| Commander O. Wildman, (MC), U. S. Navy | Laboratory Procedures and Technique. |
| Lieutenant C. C. Welch, (MC), U. S. Navy | Physical Therapy. |
| Captain G. E. Thomas, (MC), U. S. Navy | Recruiting. |
| Commander W. A. Fort, (MC), U. S. Navy; Commander F. W. Muller, (MC), U. S. Navy | X-ray. |

Appreciation and thanks are herewith expressed for the courtesy of the American Red Cross, the General Electric X-ray Corporation, and the following publishers in permitting the reproduction and use of certain illustrations appearing in this book: William Wood & Co., for figures 8, 9, 12, 15, 17, 18, 24, 27, 30, 32, 33, 37, 41, 47, and 52; Lea and Febiger for figures 10, 11, 16, 29, 40, 44, 56, 66, 67, 69, 70, 71, 77, 78, 81, and 123; W. B. Saunders & Co., for figures 49, 50, 57, 65, and 147; P. Blakiston's Son & Co., for figures 13, 14, 20, 23, 48, 124, 137, 138, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, and 178; J. B. Lippincott & Co., for figures 72, 146, and 148; and The Macmillan Co., for figure 153.

The courtesy of the Medical Department, U. S. Army in permitting use of the text of and the reproduction and use of the illustrations in the Manual of Splints and Appliances of the U. S. Army, is acknowledged.

The assistance of Pharmacist's mate first class C. E. Otwell, Jr., U. S. Navy, in preparing the index and typewriting much of the manuscript and of Chief Pharmacist's mate, J. A. McCalley, U. S. Navy, and Pharmacist's mate third class M. J. Hadden, U. S. Navy, in preparing a number of the sketches and illustrations is acknowledged.

It should always be remembered that diseases that have attacked more than half the men of the country during youth, diseases that bring misery to thousands of children and suffering to hundreds of thousands of women innocently infected, and that are incurred almost exclusively through promiscuous sexual intercourse, are diseases to be avoided. It should also be remembered that the man who practices promiscuous cohabitation almost invariably contracts one of the venereal diseases, sooner or later, in spite of every precaution. And if sufficient moral stamina to resist sexual temptation is not possessed, then it must be remembered to take prophylactic treatment as soon as possible after exposure.

REFERENCES

Syphilology.—Stokes.
Practice of Urology.—Young.
Hospital Corps Handbook, U. S. Navy, 1923

## Section 5.—INDUSTRIAL MEDICINE AND INDUSTRIAL HAZARDS

Industrial Medicine is that branch of medicine which deals with the prevention of diseases and injuries among industrial workers. Strictly speaking, industrial medicine has become of such importance in late years, that it is not now limited to workers, but endeavors to promote good health and increase the life span of the entire people.

Its purposes or aims are to insure good health, the prevention of avoidable accidents, to alleviate unnecessary suffering and thereby provide contentment and promote more efficient work. It further deals with the rehabilitation of diseased and injured persons and reclassifies them to work in such positions as their disabilities will permit, thereby obviating the necessity for their becoming public charges and insuring them a livelihood.

Industrial Medicine is akin to Hygiene and Sanitation and Preventive Medicine, but spreads out to embrace accident prevention as well. Its aims are accomplished by endeavoring to reduce the health and accident hazards to a minimum by education, safety devices and precautions, periodic physical examinations, cooperation of employees, and by the passage of laws for the protection of the workers.

The need for the development of this branch of Medicine is apparent to all, when it is known that in the sixteenth century the average life expectancy of the working man was 22 years, as compared to 44 years for those of the upper classes. The working men were really slaves. They worked from 12 to 20 hours daily, 7 days a week. They were subjected to forms of health hazards about which little or nothing was known. The death of the men was considered a natural course of events.

The value of Industrial Medicine to the workers has been clearly manifest. Today, the average working man in industry may well expect to live to the age of 50 with still a better outlook for the future when the hazards to health and accident are better understood and safety measures are developed and perfected to protect against such hazards.

In this country today, every employee is protected by laws which require that certain standards of protection be maintained against health and accident hazards. Compensation laws are in force to require the payment of disability benefits to those incapacitated by accident or disease which were connected with their employment.

hat have attacked more
seases that bring misery
of thousands of women
clusively through promis-
ded. It should also be
ous cohabitation almost
sooner or later, in spite
. to resist sexual tempta-
ke prophylactic treatment

**ND INDUSTRIAL**

hich deals with the pre-
rkers. Strictly speaking,
in late years, that it is
ote good health and in-

e prevention of avoidable
reby provide contentment
with the rehabilitation
m to work in such posi-
ng the necessity for their
d.

ion and Preventive Medi-
n as well. Its aims are
nd accident hazards to a
s, periodic physical exam-
of laws for the protection

dicine is apparent to all,
average life expectancy
44 years for those of the
They worked from 12 to
cted to forms of health
he death of the men was

as been clearly manifest.
vell expect to live to the
hen the hazards to health
sures are developed and

d by laws which require
ainst health and accident
the payment of disability
se which were connected



A National Safety Council was established in 1912 and its slogan of "Safety First" has become a by-word in all homes. In 1914 a health section composed largely of Industrial Surgeons, was incorporated as part of the association. Thus the need of medical advice in industry was established. It is a well-recognized fact that the "human machine" constitutes a very definite hazard to health and accident. The medical man therefore must form a definite part of any industrial organization. Today, the National Safety Council in America is one of the greatest organizations of its kind and by its help has put the working conditions in this country on a very high plane and the industrial worker has reaped the benefits.

Today, every industry in this country, no matter how large or how small, has its medical staff, or its equivalent. Many large industries have their own hospitals and medical staffs; others have contract surgeons but all are required in one form or other to give medical attention to the employees under them. The Government having passed such laws must therefore lead the way in protecting its own employees. The United States Navy is one of the largest of the industries maintained by this Government. An organization has been set up in the Navy to protect its personnel, both civilian and naval. A safety engineer is provided, who acts directly under the Assistant Secretary of the Navy. He has supervision of the safety precautions taken to protect the civilian employees in the navy yards, ammunition depots, torpedo stations and the like. He is also a consultant in all matters pertaining to safety aboard ships, at training stations and other Navy Department activities. A naval medical officer is assigned to his office for the purpose of consultation in all matters pertaining to health and safety and to cooperate in devising means by which health may be protected and accidents prevented. Aside from this particular medical officer, all medical officers, dental officers, members of the Hospital Corps and nurses form the balance of the medical staff of this organization. It is essential that each one of these members know and understand the hazards to be encountered in the Navy, the steps to be taken to protect against injury and disease, the treatment of diseases and injuries arising therefrom and the organization of the medical personnel for such purposes. Naval medical personnel are required to perform duties ashore, at sea, in foreign countries, in the air and under the sea. In each of these places a variety of health hazards exist. It is therefore necessary that this personnel have a thorough knowledge of the industry to which they are attached, the hazards presented, the methods of prevention and the treatment of all injuries occurring.

An occupational hazard is any condition, existing in the trades, which will lead directly or indirectly to disease or injury. No method can be devised for classifying hazards for they are too numerous. However, they may be grouped under the following headings:

1. Those hazards present in the working force by reason of physical defect.
2. Those hazards found in the working places, including hygienic and sanitary defects, mechanical defects of machinery, lack of safety education and the like.
3. Those hazards presented by carelessness of employees. A large majority of accidents are due to this cause alone.
4. Those hazards due to unforeseen influences such as lightning, earthquake, tornado, and the like.

Industrial accidents may be prevented by an understanding of the hazards presented in the foregoing groups, by:

1. Thorough physical examination of all new employees, prior to their actual employment, to discover potential physical defects which would render the em-

ployee a hazard to himself or others. An example of this would be a person with manifestly defective vision being employed as a machinist. Physical examination of all regular employees periodically, to determine their ability to continue working at their trade and to reclassify them to less hazardous work or to retire them, as found necessary in individual cases. Repeated examination of all employees engaged in hazardous trades such as sandblasting, painting, chrome plating, T. N. T. handling, and others, to determine any possible systemic effects present as a result of their trade.

2. A constant and thorough inspection of all shops and working places by the safety engineer, the medical officer, and their assistants to determine the causes of accidents, the hazards to health and the immediate correction of these faults. Education of the employees by means of lectures, motion pictures, posters, and such, will further accomplish much in the line of prevention.

3. The prevention of carelessness by indoctrination of all employees with the spirit of prevention and building up a spirit of cooperation and high morale among them. If necessary, disciplinary measures should be taken when workers are habitually careless.

4. Providing, in so far as is possible, means of protection and escape in cases of disaster.

An exact classification of occupational diseases is difficult, in view of the great number and types of diseases presented by the industry. There is such a great variety and number of skin diseases in the trades that they are generally grouped under the heading of *Occupational* or *Trade Dermatoses*. It is sufficient to state here that practically all diseases and injuries may be associated with industry.

To successfully carry out the objects of Industrial Medicine the medical personnel of the Navy must know:

1. The organization of a safety unit of an industry and the duties of each of the personnel.

2. The hazards to health and accident presented by the particular industry to which they are attached.

3. The methods and means of protection to be established against the encountered hazards.

4. The treatment of industrial diseases and injuries.

5. The laws relating to compensation and treatment of sick and injured personnel, including a knowledge of the necessary reports and returns to be submitted in such cases.

For the purpose for which this book is intended, it seems sufficient to give the hospital corpsmen a general idea of the organization, hazards, protection, treatment and laws as related to the Navy, rather than to try to discuss Industrial Medicine as a whole. This may well be done by discussing the safety organization and its associated duties at a navy yard, for those in force at navy yards are applicable to a greater or lesser degree throughout the Navy. These will be considered in the order given.

**Organization.**

At all navy yards, the Commandant is the head of the organization. He is responsible to the Navy Department for the protection of the employees, as well as the naval personnel, under his command. He is familiar with the nature of the work being performed by the employees at his station and the health and accident hazards presented. Accordingly, he appoints, as the working head of the organization, a safety officer or a safety engineer, as he is better known. The safety engineer must be of sufficient rank and service to have

iis would be a person with
iinist. Physical examina-
e their ability to continue
hazardous work or to re-
Repeated examination of
iblasting, painting, chrome
y possible systemic effects

and working places by the
ts to determine the causes
correction of these faults.
tion pictures, posters, and
vention.
of all employees with the
peration and high morale
uld be taken when workers

tection and escape in cases

s difficult, in view of the
industry. There is such a
les that they are generally
*te Dermatoses.* It is suf-
injuries may be associated

Medicine the medical per-

ry and the duties of each

by the particular industry

stablished against the en-

a.
nt of sick and injured per-
rts and returns to be sub-

it seems sufficient to give
zation, hazards, protection,
than to try to discuss In-
ne by discussing the safety
ard, for those in force at
gree throughout the Navy.

of the organization. He is
tion of the employees, as
He is familiar with the
ees at his station and the
. he appoints, as the work-
fety engineer, as he is bet-
t rank and service to have



become familiar with the various trades in a navy yard, a knowledge of machinery, a man of cooperative ability and well liked, and having sufficient knowledge of safety devices and appliances to intelligently make inspections and recommend proper protective measures. His duties are primarily, to prevent accidents and promote healthy working conditions. It is his duty to inspect all working places, make a general survey of all mechanical conditions and to recommend the addition of all necessary safety appliances for the protection of the workers. He must make daily inspections of the shops to see that these safeguards are in working order and are being used. He must investigate all major accidents in order to determine the cause and recommend methods to prevent a similar accident. There should be full cooperation between him and the medical officer. All improvements come under his supervision.

The Commandant further assigns a medical officer to act as advisor to the safety engineer. The medical officer must be of the same qualifications as the safety engineer, with the addition that he must be thoroughly versed in the diseases connected with Industry. He need not have a thorough knowledge of machinery but must understand sufficient of the operation of the various machines to intelligently advise the safety engineer in matters relating to the development of safety devices. The duties of the medical officer are as follows, and in this connection it is well for members of the Hospital Corps to understand the nature of these duties in order that they may be of assistance to him in the performance of these duties:

The medical officer is the safety engineer of the human body. He acts as consultant to the safety engineer in all matters pertaining to the general welfare and health of the employees. Hygiene and sanitation are his important duties. He must interest himself in the employees and instruct them in the every day principles of personal hygiene and self preservation. He must instruct the employees in safety measures and encourage them to cooperate in protective measures. They must be made "safety conscious" or "safety minded". The morale must be kept up. A high morale leads to fewer accidents and better workmanship. The medical officer must inspect all working places in order to have a better understanding as to the actual conditions under which the men work. He must make appropriate recommendations to improve deficiencies noted and must then see that these recommendations are carried out. He must personally make all physical examinations of prospective employees or see that the physical standards for employment are adhered to. He must make physical examinations of all employees believed to be physically unfit for further work to prevent them from injuring themselves or others. He must further treat and view the scene of all accidents to be able to determine their cause and to assist the safety engineer in formulating plans to prevent recurrences. He must so organize the personnel under him that prevention will be effectively handled.

The safety engineer is assisted in his work by the foremen of the shops and in some instances by safety committees in each shop elected by the employees. These men or committees are generally chosen from among the older employees and from men who have considerable experience in their trade. It has been repeatedly recommended, but not as yet accomplished, that the safety organization be enlarged by the creation of two new civil service ratings. These are, a civilian safety engineer and a civilian assistant safety engineer. These men would be appointed by competitive examination and should be men who have had considerable experience in the trades with a liberal understanding of all. They would act as assistants to the naval safety officer and would be of great value to the organization, inasmuch as their duties would be permanent. A

naval officer is subject to change of duty and cannot act as permanent safety officer. In changing the safety officers at intervals a weakness is left in the organization which the civilian assistants could well fill, until such time as the new officer became familiar enough with his new duties to take hold.

The organization of the medical advisor is composed of junior medical officers, dental officers, to some extent, members of the Hospital Corps, and of nurses. The duties of the hospital corpsmen are to assist the medical officer in his inspections, assist in the treatment of the injured and to prepare the necessary reports and returns in cases of accident, occupational disease, and the physical examination of employees. This, then, is briefly the organization of a safety unit in a navy yard. This unit will function as well aboard a battleship or in other places. The commanding officer of a ship is the head of the organization. He is assisted by the First Lieutenant acting as safety engineer. Division Officers act as assistants to the First Lieutenant and safety committees are elected in each division from among the crew. The medical officer is the advisor to the safety engineer and he in turn is assisted by the dental officer and hospital corpsmen. All then that is necessary for the unit to function is that a study be made of the hazards presented aboard ship and to proceed as explained later.

**Hazards to health and accidents.**

The organization completed, a study must be made to determine the hazards ...ting in the particular organization to which the unit is attached. There ... major hazards and minor hazards. A major hazard is represented by unguarded machinery or improperly or faulty insulated electrical wiring. A minor hazard is a greasy shop floor, loose articles lying around on the deck or an open, unguarded hatchway aboard ship. It must be remembered that no two industries present the same hazards. There are hazards peculiar to each trade or profession. Efforts must therefore be made by the safety organization to locate these hazards and afford protection accordingly. To indicate just what types of hazards may be encountered while working with a safety unit of a navy yard and in an effort to make the subject of hazards a little clearer to the readers the following questionnaire, prepared by the inspector of the Medical Department Activities of the West Coast is quoted in part. This questionnaire represents a very thorough picture of the major hazards with which a safety unit of a navy yard must cope, aside from the many minor ones always present in any organization. Answers to these questions must be made not only to the inspecting officer but they must in some form or other be answered daily if the organization is to be successful. By this is meant that problems of this nature are a daily occurrence and the safety unit must be prepared to meet them at once and not wait to formulate answers at inspection intervals.

"Q. 1. What industrial processes employ lead at some stage of the work? This includes tetraethyl lead. How many workers are exposed to lead? What precautions are taken to prevent damage to workers using lead? How frequently are workers using lead checked to determine possible absorption of this element?

"Q. 2. What industrial processes employ chromium at some stage of the work? What precautions are employed to safeguard workers from chromium poisoning?

"Q. 3. What processes create a possible dust hazard? What precautions are observed to prevent damage to workers exposed to dust? Are routine examinations made of the chests of workers exposed to dust? Are X-rays made to de-

annot act as permanent safety
vals a weakness is left in the
well fill, until such time as the
duties to take hold.
composed of junior medical
of the Hospital Corps, and of
re to assist the medical officer
he injured and to prepare the
ient, occupational disease, and
hen, is briefly the organization
will function as well aboard a
; officer of a ship is the head
st Lieutenant acting as safety
the First Lieutenant and safety
among the crew. The medical
l he in turn is assisted by the
that is necessary for the unit
rds presented aboard ship and

made to determine the hazards
h the unit is attached. There
ajor hazard is represented by
insulated electrical wiring. A
cles lying around on the deck
It must be remembered that
There are hazards peculiar to
efore be made by the safety
rd protection accordingly. To
ountered while working with a
make the subject of hazards a
uestionnaire, prepared by the
r of the West Coast is quoted
thorough picture of the major
ard must cope, aside from the
ganization. Answers to these
cting officer but they must in
rganization is to be successful.
are a daily occurrence and the
once and not wait to formulate

d at some stage of the work?
ers are exposed to lead? What
workers using lead? How fre-
termine possible absorption of

romium at some stage of the
guard workers from chromium

hazard? What precautions are
to dust? Are routine examina-
dust? Are X-rays made to de-



termine the presence of silicosis in workers exposed to dust? Have cases of silicosis developed?

"Q. 4. What industrial processes produce fumes which may be a health hazard? How are these fumes controlled?

"Q. 5. What industrial processes produce carbon monoxide in possible dangerous concentrations? What industrial processes produce carbon dioxide in possible dangerous concentrations? Have any cases of poisoning from these sources occurred?

"Q. 6. What processes employ volatile solvents during some stage of the work? Are aniline compounds used? Has damage occurred from their use?

"Q. 7. Are organic wax compounds used? Has damage occurred?

"Q. 8. What precautions are exercised to prevent damage from pipe covering compounds? What asbestos hazards exist?

"Q. 9. What precautions are taken to prevent damage from glass wool?

"Q. 10. What radio-active compounds are used on the station and what precautions are used to prevent damage from this and luminous paints?"

These are but a few of the questions asked but they serve the purpose for which they were intended, i. e., to indicate just what is meant by a health hazard and ones which must be studied in Industrial Medicine.

**Protection.**

Having made a survey to determine the hazards presented in the organization to which one is attached, means of protection must be sought. This is done first by protecting against physical hazards by employing physically fit men. In the Government, the physical standards are set according to the employment and the hazards to be met with in each type of work. The U. S. Civil Service standards are as follows:

1. For employment in arduous duties. Must be physically sound and in good health, active and able bodied. Rating "A". For some positions e. g. divers, requirements are specially rigid. Rating "A plus".

2. For less arduous employment. Requiring sound general health but less physical strength, though for some employment special requirements exist, i. e. perfect color preception for brakemen and chauffeurs. Rating "B".

3. For lighter and usually sedentary employments. General good health but minor anatomical defects not interfering with efficient performance of work may be passed, i. e. a typist may be lame.

Next, having employed a healthy working force it is necessary to protect their health. Proper working places must be provided and maintained. Hygienic and sanitary conditions must be kept on a high plane. All moving parts of machinery must be guarded; goggles provided for workers required to use them; helmets and masks for sand blasters; proper ventilation for the chrome workers; masks for asbestos workers; protection for workers in X-ray and radium; protective gloves, shoes, and other garments for foundry workers, and other means of protection too numerous to mention here must be available and used.

Special physical examinations must be made of all sand blasters, asbestos handlers, those exposed to radium and its compounds, lead workers, those engaged in dusty or smoky trades, handlers of T. N. T. and other explosives, etc., to prevent the occurrence of the diseases associated with those trades from injuring the men.

As mentioned before, all workers who are sick for any length of time and whose efficiency has fallen off because of physical reasons must be examined and either retired or reclassified.

**Treatment.**

The treatment of industrial diseases and injuries is essentially that for any others. All accidents are treated according to the severity and locality. Men are not allowed to treat themselves for even minor accidents by reason of the dangers of infection and later incapacity. The treatment of diseases of occupation is a specialty in itself and need not be considered here.

**Laws governing workers and accidents occurring during work.**

The laws governing occupational diseases and injuries are quite numerous. It is therefore essential that a hospital corpsman be familiar with only those pertaining to Government employees. These, in general, are as follows:

All men injured or taken sick during the course of their employment are required to report to the dispensary for treatment. It makes no difference how trivial the accident or how minor the illness, he must still report. No first-aid boxes are allowed in any of the shops or offices. When a man reports, his injury or illness is investigated, treated, or otherwise disposed of. At the U. S. Navy Yard, Puget Sound, Wash., a form report of the case is prepared in quintuplicate, two copies of which are forwarded to the safety engineer, one copy is sent to the foreman of the shop or the supervisor of the office, one is given to the employee, and one placed in his file jacket. A separate file jacket is maintained for each employee who reports to the dispensary for treatment or for any other reason and is a permanent record which is kept during the entire time of employment. The information furnished on this report is as follows: Date; whether report is of injury or return to work; name; rating; pay number; shop; diagnosis; date and hour of injury; date and hour reported to dispensary; whether or not injury is due to employment; disposition (treated and returned to work, given time off, or transferred to naval hospital); name of medical officer treating case; and patient's statement regarding injury.

In addition to this form, a card-index form, U. S. Employees' Compensation Commission Form CA-19, is made out in each case. This form is started when the man reports and when final disposition of the case is made it is likewise filed in the man's jacket.

When an injured employee returns to his shop or office, or when the foreman or supervisor receives his copy of the form report, the foreman or supervisor immediately fills out U. S. E. C. C. Form CA-2, and forwards it to the injury officer, who, in turn, submits it to the dispensary for completion by the medical officer treating the case. The medical officer gets the data for this report from the forms previously described.

U. S. E. C. C. Form CA-3 is forwarded at the termination of total or partial disability of an employee, or upon his death.

U. S. E. C. C. Form CA-4 is a claim for disability allowance or compensation for injuries received which must be submitted by the employee within 60 days after the injury. This form must also be completed by the medical officer attending the case and once again the form report and U. S. E. C. C. Form CA-19 are of value.

U. S. E. C. C. Form CA-8 is similar to Form CA-4 but must be submitted on the first and sixteenth of each month by the employee, during the period of his disability.

When it becomes necessary for an injured employee to have hospital or other treatment not provided by a dispensary or local physician, U. S. E. C. C. Form CA-16 is made out and forwarded with the patient to the hospital or place where he is to receive such additional care.

njuries is essentially that for
ıg to the severity and locality.
even minor accidents by reason
ty. The treatment of diseases
not be considered here.

r during work.

d injuries are quite numerous.
an be familiar with only those
general, are as follows:
ourse of their employment are
tment. It makes no difference
ness, he must still report. No
or offices. When a man reports,
or otherwise disposed of. At
a form report of the case is
h are forwarded to the safety
e shop or the supervisor of the
ed in his file jacket. A separate
o reports to the dispensary for
ermanent record which is kept
information furnished on this
of injury or return to work;
date and hour of injury; date
ot injury is due to employment;
ven time off, or transferred to
ting case; and patient's state-

U. S. Employees' Compensation
ch case. This form is started
ition of the case is made it is

hop or office, or when the fore-
m report, the foreman or super-
n CA-2, and forwards it to the
e dispensary for completion by
edical officer gets the data for
l.
e termination of total or partial

ility allowance or compensation
by the employee within 60 days
pleted by the medical officer at-
port and U. S. E. C. C. Form

CA-4 but must be submitted on
ployee, during the period of his

ployee to have hospital or other
physician, U. S. E. C. C. Form
atient to the hospital or place



Times arise when there is doubt as to the origin of the disability, i. e., whether or not the disability is occupational. In such cases U. S. E. C. C. Form CA-17 is substituted for Form CA-16. Whenever U. S. E. C. C. Forms CA-16 and CA-17 are made out they must be accompanied by U. S. E. C. C. Form CA-20.

U. S. E. C. C. Form CA-21, Discharge Report of Injury Case, is forwarded when an employee is discharged from treatment after having been incapacitated by reason of occupational injury or disease.

U. S. E. C. C. Form CA-32 is a report of hernia and must be submitted in all cases in which claim is made that a hernia was caused by employment.

Numerous other forms, such as public bills for payment for treatment, are used in handling these cases, but as they are accomplished by the injury officer they are not listed here.

Forms showing reports of all physical examinations of employees, including the special examinations previously mentioned, are also kept. These are routine however, and are easily learned when actually engaged in this work. Special forms for W. P. A., E. R. N., and P. W. A. workers are also provided.

In conclusion, it is well to state the qualifications expected of a hospital corpsman engaged in Industrial Medicine.

1. He should realize that his first duty is to the workman who is injured.
2. His personality should inspire confidence.
3. He should have a knowledge of first aid.
4. He should have a knowledge of an efficient medical record system and of statistical methods.
5. He should have a knowledge of sanitation, of working conditions, of occupational hazards and preventive measures.
6. He should possess a general knowledge of industrial relations, including employment, its methods and problems.
7. He should have a working knowledge of the workmen's compensation laws.
8. It would be well for all hospital corpsmen to obtain and read the publication Medical Service in Industry and Workmen's Compensation Laws, 1938, published by the American College of Surgeons as prepared by M. N. Newquist, A. B., B. Sc., M. D., to enhance their knowledge of this subject and thereby be of more value to the medical organization of the Navy for industrial medicine. This publication contains concise, complete statements of the problems of the industrial organization and is of value to all industries.

REFERENCES


Industrial Medicine and Surgery.—Mock, 1931.
Industrial Health.—Kober and Hayhurst.
U. S. Naval Medical Bulletin, January and April, 1935.
Medical Service in Industry and Workmen's Compensation Laws, 1938.
Inspection Questionnaire, West Coast Medical Activities, U. S. Navy.


## Section 6.—FIELD SANITATION

*Health is necessary in war, and cannot be replaced by anything else.—Napoleon*

Introduction.

The activities of a medicomilitary organization tend to concentrate toward one primary objective, *"The conservation of physical efficiency for combat."* The hospital corpsmen of the Navy serve ashore, as well as afloat, and in

